IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

VICKI ISOME, RODERICK          *
WILLIAMS and ANNIE FRANKLIN,
                               *
     Plaintiffs,
                               *        CASE NO. 4:10-CV-83 (CDL)
vs.
                               *
GOLD CAR LENDING INC. and
GIL'S AUTO SALES, INC.,         *

     Defendants.               *

_____

O R D E R

Plaintiffs are former employees of Defendant Gil's Auto Sales, Inc. ("Gil's"). Plaintiffs claim that Gil's terminated them because of their race, in violation of 42 U.S.C. § 1981. Gil's contends that Plaintiffs were terminated for poor performance. Presently pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 15). For the reasons set forth below, the motion is granted.[1]

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

---

[1] It is not clear from the present record how Defendant Gold Car Lending, Inc. is involved in this case. Plaintiffs appear to allege that Gold Car Lending, Inc. was their joint employer along with Gil's and that both companies had the same chief executive officer, who made the employment decisions at issue in this case. Plaintiffs' claims against Gold Car Lending, Inc. are based on the same set of facts as their claims against Gil's, so Gold Car Lending, Inc. is entitled to summary judgment for the same reasons that Gil's is entitled to summary judgment.

movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).  In determining whether a *genuine* dispute of
*material* fact exists to defeat a motion for summary judgment,
the evidence is viewed in the light most favorable to the party
opposing summary judgment, drawing all justifiable inferences in
the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 255 (1986).  A fact is *material* if it is relevant or
necessary to the outcome of the suit. *Id.* at 248.  A factual
dispute is *genuine* if the evidence would allow a reasonable jury
to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the
record establishes the following.  Unless otherwise noted, the
facts are undisputed.

**I.  Gil's Auto Sales**

Gil's sells used cars through five dealerships in Georgia
and Alabama.  The two largest dealership locations are in Phenix
City, Alabama: one on Highway 80 ("Highway 80 Dealership") and
the other on the Highway 280 Bypass ("280 Dealership").  During
the relevant timeframe, Gil Dyer was chief executive officer of
Gil's.  He made the hiring and firing decisions for Gil's.

Gil's finances most car purchases directly, so customers
who purchase a car from Gil's typically make payments on the car

to the dealership itself.  If a customer cannot make timely payments, Gil's may have to repossess the car.

All three Plaintiffs, who are black, worked at the 280 Dealership.  Gil's hired Plaintiff Vicki Isome in February 2007. Gil's hired Plaintiff Annie Franklin in May 2007 based on Isome's recommendation.  Gil's hired Plaintiff Roderick Williams in January 2008.  The primary job function for all three Plaintiffs was collections—collecting money that customers owed on their accounts.  Plaintiffs also repossessed and sold cars. Other employees at the 280 Dealership included Sharon Dyer (Gil Dyer's wife), Harmon Parnell, and Ronnie Short.  Sharon Dyer, who is white, supervised the employees at the 280 Dealership and also did some collections work.  Parnell, a white male, was primarily a car salesman, though he also did some collections work.  Short, a black male, was a porter who detailed cars and ran errands.  Plaintiffs were the only employees at the 280 Dealership whose primary job function was collections.

Gil's prepared daily reports to measure collections performance.[2]  Defs.' Mot. for Summ. J. [hereinafter Defs.' MSJ] Attach. 3, Gil Dyer Decl. ¶ 23, ECF No. 15-3.  Gil Dyer reviewed the collections figures for the Gil's dealerships on a daily, weekly and monthly basis.[3]  *Id.* ¶ 28.  Gil Dyer also regularly

---

[2] Plaintiffs dispute this statement but offer no evidence to refute it.
[3] Plaintiffs dispute this statement but offer no evidence to refute it.

reviewed listings of accounts that were delinquent and cars that were repossessed.[4]   *Id.* ¶¶ 22, 24.   Gil's also prepared monthly collections reports, which included a "loss percentage" calculation.   The "loss percentage" is the total amount of losses on vehicles divided by the amount collected in a given month.   The monthly collections reports also included the "collections percentage" (also called the "bonus percentage"), which is the amount of money actually collected divided by the amount forecasted by Gil's.   Isome prepared the monthly collections performance reports—which included the loss percentage and the collections percentage—for the 280 Dealership and faxed them to Whitney Woodall, who was the collections manager for Gil's.[5]   Pls.' Br. in Resp. to Defs.' MSJ [hereinafter Pls.' Resp.] Attach. 6, Isome Aff. ¶¶ 62-66, ECF No. 19-6.

---

[4] Plaintiffs dispute this statement but offer no evidence to refute it.
[5] Plaintiffs contend that Woodall "artificially" and "subjectively" changed the total amounts in the collections reports for the 280 Dealership by deducting losses due to repossession, thus resulting in lower collections numbers.   Plaintiffs assert that Woodall's "usual practice" at the Highway 80 Dealership was to "wait several months before pulling out the repossessions."   *E.g.,* Isome Aff. ¶ 45. Plaintiffs did not point to any evidence that they were involved in the collections performance calculations for the other dealerships or that they had personal knowledge of Woodall's process.

Plaintiffs also assert that Sharon Dyer hindered their ability to perform their collection duties because she instructed them not to collect on an account if she knew the customer.   Plaintiffs did not point to any evidence of how much this instruction impacted their collections efforts.

When he reviewed the collections performance for the 280 Dealership during the summer of 2008 and compared it to the collections performance for the Highway 80 Dealership, Gil Dyer became concerned that the 280 Dealership was not performing up to standards.  Gil Dyer Decl. ¶¶ 37-41 (discussing summer 2008 collections numbers).  Between March 2008 and July 2008, the loss percentage at the Highway 80 Dealership was better than the loss percentage at the 280 Dealership.[6]  It is undisputed that in July 2008, the loss percentage at the 280 Dealership was 16.11%; during the same month, the loss percentage at the Highway 80 Dealership was 8.82%.[7]  It is undisputed that the collections percentage for the 280 Dealership was 79% in July 2008, which was significantly worse than the loss percentage for the Highway 80 Dealership, which was 97%.  It is also undisputed that the 280 Dealership had twenty repossessions during July 2008, which was higher than usual.  *Id.* ¶ 42.  In addition, Gil Dyer found

---

[6] Plaintiffs admit that the loss percentage for the Highway 80 Dealership was 5.01% in March, 7.92% in April, 11.43% in May, 8.03% in June, and 8.82% in July.  Pls.' Resp. to Defs.' Statement of Undisputed Material Facts ¶ 38, ECF No. 18-1.  Plaintiffs also admit that the loss percentage for the 280 Dealership was 10.37% in March, 11.69% in April, 10.75% in May, 8.71% in June, and 16.11% in July. *Id.; accord* Defs.' MSJ Attach. 4, Woodall Decl. Attachs. 1-2, ECF No. 15-4.

[7] Plaintiffs assert that someone at the Highway 80 Dealership added some repossessions to their July numbers, which increased their loss percentage.  The July 2008 collections report for the 280 Dealership reflects a "repo loss" of $50,816.29.  Defs.' MSJ Attach. 4, Woodall Decl. Attachs. 1, ECF No. 15-4 at 17.  Plaintiffs did not point to any evidence of what the correct repossession amount was or how it was changed.  Moreover, Plaintiffs admit that the 280 Dealership had twenty repossessions in July 2008, which is the number reflected on the July 2008 collections report for the 280 Dealership.  *Id.*

based on his review that the number of delinquent accounts for the 280 Dealership was growing and that the average duration of the delinquencies was getting longer. *Id.* ¶ 39. Based on all of this, Gil Dyer concluded that there was a "serious crisis" at the 280 Dealership and that the 280 Dealership was in "serious trouble." *Id.* ¶ 45.

In August 2008, Isome and Williams attended a collections meeting at the Highway 80 Dealership. That meeting was also attended by Gil Dyer, Sharon Dyer, Whitney Woodall and Jamie Dyer. It is undisputed that Woodall asked Isome and Williams to provide information regarding delinquent accounts. According to Williams, he and Isome were given a list of "about seven accounts to go and see if [they] could try to locate them." Defs.' MSJ Attach. 12, Williams Dep. 43:11-20, ECF No. 15-12 [hereinafter Williams FLSA Dep.].[8] Isome and Williams went to try to find the accounts but were unable to find all of them. *Id.* at 44:1-24.

---

[8] In his affidavit, Williams stated that he and Isome were asked about "one specific account, not seven." Pls.' Resp. Attach. 3, Williams Aff. ¶ 47, ECF No. 19-3. This statement directly contradicts Williams's previous deposition testimony, and Williams offered no explanation for the discrepancy, so the Court may disregard the affidavit statement. *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1382 (11th Cir. 2010) (stating that a court "may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony" (internal quotation marks omitted)).

The collectors at Gil's, including Plaintiffs, were instructed to record details of their conversations with customers when they contacted customers to try to collect payments. Plaintiffs were aware of this job requirement. At the August 2008 meeting, Woodall confronted Isome and Williams about failing to keep adequate records in the customer files. Defs.' MSJ Attach. 9, Isome Dep. 113:11-26, ECF No. 15-9. Although the management at Gil's determined that the collectors at the 280 Dealership were not keeping adequate records regarding their customers, *e.g.*, Gil Dyer Dep. ¶¶ 44-45, Plaintiffs assert that they did keep adequate records regarding their customers, *e.g.*, Isome Aff. ¶ 37.

After the meeting with Williams and Isome, Gil Dyer continued to review the customer records for the 280 Dealership and concluded that they were "in very bad shape." Gil Dyer Aff. ¶ 46. Gil Dyer and Woodall discussed suspending new sales at the 280 Dealership until they "could get a handle on the status of the delinquent accounts."[9] Gil Dyer Aff. ¶ 47. After the August 2008 meeting, Gil Dyer decided to terminate all three collectors at the 280 Dealership because it was "clear to [him] that they were not satisfactorily performing their jobs." *Id.* ¶ 48. After he made the decision to terminate Plaintiffs, Gil Dyer informed Jamie Dyer and Woodall of his decision and told

---

[9] Plaintiffs dispute this statement but offer no evidence to refute it.

them to terminate Plaintiffs.  Plaintiffs were terminated in August 2008.  According to Plaintiffs, Jamie Dyer told each of them that Gil's just "wanted to go in a different direction and get a new crew."  *E.g.,* Isome Aff. ¶ 76.  It undisputed that after Plaintiffs were terminated, the collectors Gil's hired to replace Plaintiffs at the 280 Dealership were white.

## DISCUSSION

Plaintiffs assert that Gil's terminated them in violation of 42 U.S.C. § 1981 ("§ 1981").  Section 1981 prohibits race discrimination in the making and enforcement of contracts. 42 U.S.C. § 1981.  Therefore, to establish a § 1981 claim, a plaintiff must prove that his employer discriminated against him because of his race.  Where, as here, there is no direct evidence of discrimination, the courts employ the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981).  *E.g., Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1015 n.1 (11th Cir. 2001) (per curiam).  Under that framework, the plaintiff must first establish a prima facie case of discrimination.  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).  "To establish a prima facie case of discriminatory discharge, the plaintiff must show that she (1) was a member of a protected class, (2) was qualified for

the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004). Once a plaintiff establishes a prima facie case of discriminatory discharge, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the challenged employment action. *Id.* at 1235. If the employer proffers a legitimate nondiscriminatory reason, then the plaintiff must establish that the proffered reason is pretext for discrimination. *Id.*

Here, Gil's concedes for purposes of summary judgment that Plaintiffs have established a prima facie case of discriminatory discharge. Gil's has articulated a legitimate nondiscriminatory reason for its decision to terminate Plaintiffs' employment: according to Gil's, Plaintiffs were terminated for poor performance after Gil Dyer discovered that the 280 Dealership was in serious trouble due to poor performance by the collections team. In addition to articulating a non-discriminatory reason for its action, Gil's points to the following evidence in support of its decision. First, the loss percentage for the 280 Dealership was worse than the loss percentage for the Highway 80 Dealership for several months, and it was far worse in July 2008. Second, the 280 Dealership had a higher than normal number of repossessions during July 2008.

Third, the number of delinquent accounts for the 280 Dealership was growing, and the average duration of the delinquencies was increasing.  Fourth, Isome and Williams were unable to locate several delinquent accounts, which led Gil Dyer to conclude that the collectors at the 280 Dealership were not keeping adequate records regarding their customers as they were required to do.

Given that Gil's has articulated a legitimate nondiscriminatory reason for terminating Plaintiffs, the burden shifts to Plaintiffs to establish that the proffered reason—poor performance—is pretext for discrimination.  To show pretext, Plaintiffs "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez*, 610 F.3d at 1265 (internal quotation marks omitted). Plaintiffs' burden is to show not just that Gil's proffered reasons for firing them "were ill-founded but that unlawful discrimination was the true reason." *Id.* at 1267.  Plaintiffs may not "recast" Gil's "proffered nondiscriminatory reasons or substitute [their] business judgment for" Gil's. *Id.* at 1265 (internal quotation marks omitted).  If the reason "is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [Plaintiffs] cannot succeed by simply quarreling with the wisdom of that reason." *Id.* at 1266

(internal quotation marks omitted). The inquiry into pretext centers on the employer's beliefs. *Id.* at 1266. The relevant question here is whether Gil Dyer believed that Plaintiffs' performance was poor, or instead merely used complaints about their performance "as cover for discriminating against" them because of their race. *Id.* The Court does not "sit as a super-personnel department," and it is not the Court's "role to second-guess the wisdom of an employer's business decisions . . . as long as those decisions were not made with a discriminatory motive." *Id.*

Plaintiffs attempt to establish pretext in several ways. First, Plaintiffs assert that Jamie Dyer told each of them during their termination meetings that Gil's just wanted a "new crew." Isome Aff. ¶ 76. Plaintiffs took this statement to mean that Gil's wanted white collections workers at the 280 Dealership. *Id.* ¶ 77. Nothing in Jamie Dyer's statement reflects a discriminatory animus, however, and the Court cannot conclude that his statements support a finding of pretext.

Second, Plaintiffs contend that Gil's retained white car salesman Harmon Parnell even though he did not perform all of the collections work he was assigned. Where an employer's action is "assertedly prompted by a work rule violation, a plaintiff may demonstrate pretext by showing . . . that . . . other employees not within the protected class who engaged in

similar conduct were not similarly treated." *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 338 (11th Cir. 2011) (per curiam). A proper "comparator must be similarly situated in all relevant respects." *Id.* (internal quotation marks omitted). "The most important points of comparison in identifying a proper comparator in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id.* (internal quotation marks omitted). In this case, Harmon Parnell is not an appropriate comparator for Plaintiffs. Plaintiffs do not dispute that their primary role at Gil's was collections, while Parnell's primary role was sales. Therefore, even if Parnell performed his secondary role of collections poorly, he was not similarly situated to Plaintiffs, whose primary responsibility was collections. Accordingly, Plaintiffs cannot establish pretext based on Parnell.

Third, Plaintiffs assert that white office workers "had not met their quotas for collections during more than one month" but were not fired. Isome Aff. ¶¶ 59-60. Plaintiffs also state, in conclusory fashion, that no "similarly situated" white workers were terminated. These assertions are not enough to establish pretext. Plaintiffs must "present concrete evidence in the form of specific facts" to show pretext, and "[m]ere conclusory allegations and assertions [will] not suffice." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). Plaintiffs pointed

to no specific evidence that there were similarly situated white individuals who were treated more favorably than Plaintiffs were. Even though Plaintiffs assert that some white employees did not make their collections quotas for more than one month, there is no evidence of where these employees worked, whether their primary role was collections, or how poorly they performed. The only concrete evidence in the record is that the Highway 80 Dealership's collections numbers were significantly better than those for the 280 Dealership.

Finally, Plaintiffs argue that their performance was not as bad as Gil's represents. They contend that Woodall modified the 280 Dealership's collections numbers to record repossessions differently than they were recorded at the other dealerships. Plaintiffs pointed to no evidence to support this assertion. There is no evidence that Plaintiffs were involved in the collections performance calculations for the other dealerships or that they had personal knowledge of Woodall's process. Moreover, even if they had pointed to such evidence, they pointed to no evidence that Gil Dyer knew or should have known that the reports for the 280 Dealership might not be correct based on Woodall's alleged manipulations. Plaintiffs also contend that Isome and Williams only had trouble locating one account when asked to provide information during the August 2008 meeting. However, Williams represented in his deposition that

he and Isome were asked to locate "about seven accounts" and that they could not find all of them. Williams FLSA Dep. 43:11-20, 44:1-24. For all of these reasons, the Court finds that Plaintiffs cannot establish pretext based on their conclusory assertions that they satisfactorily performed their jobs.

As discussed above, the Court concludes that Plaintiffs have failed to produce sufficient evidence from which a reasonable factfinder could conclude that Gil's articulated reasons for terminating Plaintiffs' employment were a pretext for racial discrimination. Accordingly, Defendants are entitled to summary judgment.

CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 15) is granted.

IT IS SO ORDERED, this 17th day of November, 2011.

S/Clay D. Land
_____
         CLAY D. LAND
  UNITED STATES DISTRICT JUDGE